GILBERT J. VOLLICK, PROSECUTOR, v. LEHIGH VALLEY RAILROAD COMPANY OF NEW JERSEY AND TOWN OF IRVINGTON, RESPONDENTS.

Argued October 5, 1927—Decided January 27, 1928.

Before Justices TRENCHARD, KALISCH and KATZENBACH.

For the prosecutor, *Frank E. Bradner.*

For the respondent Lehigh Valley Railroad Company, Collins & Corbin.

For the respondent Town of Irvington, *Stewart & Hartshorne.*

The opinion of the court was delivered by

KATZENBACH, J.   This case is before this court on a writ of *certiorari* to review an order for the appointment of commissioners to condemn lands of Gilbert J. Vollick, the prosecutor, for alleged railroad purposes.   On April 3d, 1908, William L. Glorieux, John S. Hobbs and the Lehigh Valley Railroad Company (hereinafter called the Railroad Company) entered into an agreement by which the Railroad Company agreed to construct a siding, partly in Irvington and partly in Newark, extending from its line of railroad through property of Glorieux and thenec to property of Hobbs.   The siding passed through property now belonging to the prosecutor.   The property of John S. Hobbs was later conveyed to the Frankling Lumber Company, and the property of William L. Glorieux was conveyed to the Bierman-Everett Foundry Company.   The agreement provided that it could be terminated on thirty days' notice.   The agreement was construed in *Hedden* v. *Bierman-Everett Foundry Co.,* 90 *N. J. Eq.* 227.   The prosecutor's lands belonged to William L. Glorieux when the agreement was made in 1908.

The prosecutor gave notice of cancellation of the agreement of April 3d, 1908.   Over this siding the Franklin Lumber Company receives over one thousand cars in a year and the Bierman-Everett Foundry Company from sixty-five to seventy cars.   The Bierman-Everett Company and the Franklin Lumber Company would be embarassed in their respective businesses if the siding was removed.   The Franklin Lumber Company has obtained a preliminary injunction by which

the prosecutor is restrained from removing the track. The Railroad Company has filed in the secretary of state's office a route for a branch which corresponds with the present siding. The Railroad Company seeks to condemn a part of the prosecutor's land which it requires for this branch.

The prosecutor contends, first, that no *bona fide* offer for the land required was made by the Railroad Company. The evidence shows that the prosecutor and the attorney for the Railroad Company met at the office of prosecutor's counsel. The prosecutor said that the Railroad Company would damage his land and he wanted to sell all of it. The attorney for the Railroad Company said his client was not in the real estate business. There was an *impasse,* so no definite sum was tendered. It does, however, appear that the attorney for the Railroad Company was willing to buy, in addition to the piece required for the right of way, the piece of land in the southwest corner of the tract which would be cut off from the balance of the posecutor's land by the branch road. This offer was not accepted. It seems to us that, under the circumstances, the law as to attempted agreement on price was satisfied. The prosecutor would only sell the whole tract and declined, as stated, the offer of the Railroad Company's attorney to purchase the land needed for the right of way with or without the parcel which would be cut off by the branch. Under these circumstances we think the Railroad Company was not required to offer a definite sum.

The second contention of the prosecutor is that the proposed branch is not intended for public use. It is claimed that as the branch will be for the accommodation of a foundry company and a lumber company this is a private use, and to permit condemnation of land for private use is a violation of the right of private property. We are not impressed with this argument. The fact that over one thousand cars will pass into the lumber yard annually and from sixty-five to seventy cars into the foundry yard, indicates that a large business will be conducted along the line of this proposed branch to the benefit of the public of Irvington and vicinity. The transportation of freight is a public franchise. Better facilities for the receipt of lumber and iron, for example,

which is used in the building of homes, stores and factories, is an object which concerns the public interest. The test of public character is not in the number of persons or corporations located along the line of a proposed branch, but in the character of the use to which the branch will be put. *De Camp* v. *Hibernia Railroad Co.*, 47 *N. J. L.* 43, 45.

The third ground advanced by the prosecutor to set aside the order is that the Railroad Company has not obtained the consent of the town of Irvington to cross a street. If such consent be necessary it is not such a prerequisite as can defeat a condemnation proceeding. If such were the case a railroad company would be under the necessity of obtaining an ordinance from every municipality through which its line of railroad was to pass prior to the commencement of any condemnation suit. The matter of a street crossing is now under the jurisdiction and the control of the board of public utility commissioners. *Perth Amboy* v. *Board of Public Utility Commissioners*, 98 *N. J. L.* 106. As the railroad is already constructed, no new crossing over a public highway will have to be constructed.

The order under review is affirmed, with costs.